UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

IN RE:

STEPHEN BENITO DELUCA,

    Debtor,

Bankruptcy Court
Case No. 6:09-BK-16917
Chapter 7
Adversary No. 6:10-AP-68

_____/

STEPHEN BENITO DELUCA,

    Appellant,

-vs-                                                    Case No. 5:11-cv-562-Oc-WTH

CAPITAL SOURCE FINANCE LLC,

    Appellee.

_____/

**MEMORANDUM OPINION**

This is an appeal by the Debtor from a judgment entered by the Bankruptcy Court based on oral findings announced by the Bankruptcy Judge after a four day bench trial. The judgment was entered in an adversary proceeding brought against the Debtor, Stephen Benito Deluca, by a judgment creditor, Capital Source Finance, LLC. The judgment of the Bankruptcy Court decreed that Deluca's debt in the form of a money judgment owed to Capital Source Finance was not subject to discharge by virtue of § 523(a)(2)(A) of the Bankruptcy Code, U.S.C. § 523(a)(2)(A)[1], because

---

[1]The statute says:

    § 523. Exceptions to discharge

        (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
                              * * * *

Case 5:11-cv-00562-WTH    Document 16    Filed 09/04/12    Page 2 of 7 PageID 1469

the underlying obligation to Capital Source Finance represented money obtained by fraud or false representations made by the Debtor.

The Debtor's argument on appeal is that the factual findings of the Bankruptcy Judge are clearly erroneous.

The issue has been thoroughly briefed, and the facts and legal arguments are adequately presented in the briefs and the record such that the decisional process would not be significantly aided by oral argument. The appeal is therefore ready for decision. The Court's conclusion is that the Bankruptcy Court will be affirmed.

**I**

In 1983, the Debtor, Mr. Deluca, purchased a small petroleum distribution business which owned two trucks and had gross annual sales of $100,000. He then started doing business as Delco Oil, Inc., of which he was President and sole stockholder. Over the next twenty years he built his business ten fold into one which employed 160 people and grossed $100,000,000 in annual sales. The Bankruptcy Judge aptly described Mr. Deluca as a self made man with a hands on management style.

Delco's expansion over the years was largely accomplished on borrowed funds – lines of credit referred to as "revolving loan facilities" with the amount of credit available from time to time being determined by the shifting aggregate value of

---

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Delco's product inventory and its accounts receivables which were pledged as security for the loan. The borrower, Delco, was required to submit true and accurate Borrowing Base Certificates to the lender on a weekly basis showing the current amounts of inventory and receivables on the books. Delco, over the years, had successive agreements with several lenders. In April of 2006, at a time when Delco had been doing business with Wachovia Bank, it negotiated a new agreement and line of credit with Capital Source Finance.[2] The initial loan by Capital Source Finance was in excess of $14 million, most of which was used to pay off the outstanding obligation to Wachovia, the predecessor lender. The loan was made on the basis of a Borrowing Base Certificate signed by Deluca.

Over the next six months, from April 26, 2006, to October 26, 2006, most of the Borrowing Base Certificates were prepared, signed and forwarded to Capital Source Finance by Richard Hill who had been employed as Delco's controller since 2000. There is no dispute that during that time – April to October, 2006 – Hill falsified and inflated the Borrowing Base Certificates as well as Delco's supporting records and invoices,[3] and perpetrated in the process a massive fraud for which he was ultimately prosecuted and convicted.

During the time this fraud was being executed, Mr. Deluca himself signed some of the Borrowing Base Certificates, and he was regularly present on the premises. He

---

[2] The agreement was personally guaranteed by Mr. Deluca.

[3] There was testimony, credited by the Bankruptcy Judge, that the existence of the phony records was well known among the employees in Delco's business office, some of whom prepared the documents and encoded them with the designation "BB" signifying "Bad Boy" – a code that was common knowledge in the office.

3

was not, in other words, an absentee owner.  Furthermore, during the relatively brief six month period that Capital Source Finance was the lender, the size of the loan grew from about $14 million to $19 million, an increase of more than 35%, necessarily meaning that the underlying assets as represented to the lender grew (or were inflated) at roughly the same rate.  To suggest that the owner of such an enterprise was unaware of the reason for that fictitious growth as it occurred strains credulity beyond its elasticity.

In any event, the fraud was discovered at the end of October, 2006, when Hill went on vacation.  Capital Source Finance then sued Deluca in the state courts of Maryland and recovered a judgment against him for $21 million.  Deluca then filed his voluntary petition in the Bankruptcy Court, and this litigation ensued concerning the dischargeability of the debt represented by that judgment.

**II**

The Bankruptcy Judge completely discounted the testimony given by the disgraced and discredited Richard Hill, and Mr. Deluca testified that he had no knowledge of the fraud.  As a consequence, the Bankruptcy Judge reached her contrary conclusion on the basis of the credibility (or lack of credibility) of the witnesses, the circumstantial evidence, and the totality of the inferences to be drawn from all of the evidence.

Counsel for Mr. Deluca argues, in effect, that there is no direct or smoking gun evidence that he was a knowledgeable participant or co-conspirator in the fraud – "Hill's fraud" as he would describe it – and that the contrary finding of the Bankruptcy

4

Judge is therefore clearly erroneous. But that syllogism simply amounts to a misstatement of the law. Courts have recognized time and again that establishing conspiratorial complicity is rarely susceptible of direct proof, and that persuasive circumstantial evidence is sufficient even in a criminal case where the standard of proof is much higher.[4] Moreover, in a case like this, the fact finder's evaluation of the credibility of the accused as a witness is a central component in the process.[5] That is the principal reason that the law also requires a reviewing court to apply a clearly erroneous standard of review and give substantial deference to the fact findings of the trial court. Applying that standard, this Court cannot disturb the fact findings of the Bankruptcy Court "unless it is left with the definite and firm conviction that a mistake has been made after making all credibility choices in favor of the fact finder's choice, in light of the record as a whole." City of Riviera Beach v. That Certain Unnamed

---

[4]See United States v. Edwards, 526 F.3d 747, 757 (11th Cir. 2008) ("Criminal conspiracies, because they are inevitably secret, are rarely established by direct evidence. The cases accordingly turn on whether there is circumstantial evidence that two or more persons conspired to commit the criminal offense."); In re XYZ Options, Inc., 154 F.3d 1262, 1271 (11th Cir. 1998) ("Because proof of 'actual intent to hinder, delay or defraud' creditors, pursuant to 11 U.S.C. § 548, may rarely be accomplished by direct proof, the Trustee argues that courts may infer fraudulent conduct from the circumstantial evidence and the surrounding circumstances of the transactions. We agree with the Trustee. In determining whether the circumstantial evidence supports an inference of fraudulent intent, courts should look to the existence of certain badges of fraud."); United States v. Suba, 132 F.3d 662, 673 (11th Cir. 1998) ("The Government need not produce direct proof of scienter in a mail fraud case, however; circumstantial evidence of criminal intent can suffice . . . . Guilty knowledge can rarely be established by direct evidence, especially in respect to fraud crimes which by their very nature, often yield little in the way of direct proof.").

[5]There was evidence, for example, germane to Deluca's good faith, or lack of it, that he diverted substantial funds from an account required to be "blocked" by the loan agreement with Capital Source Finance. This breach may not be direct evidence of knowing participation in the fraud, but it would not be unreasonable to draw that inference when taken in conjunction with all of the other facts and circumstances of the case and/or, at the very least, it could be taken into account in evaluating his credibility as a witness.

5

Gray, Two Story Vessel Approximately Fifty-Seven Feet In Length, 649 F.3d 1259, 1270 (11th Cir. 2011) (internal citations and quotations omitted). And if a finding is "plausible in light of the entire record [it cannot be reversed even if the reviewer] is 'convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" (Id. at 1270, quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504 (1985)).

Suffice it to say that this Court, looking at the record as a whole, is not left with a definite and firm conviction that a mistake has been made by the Bankruptcy Court. The Bankruptcy Court's findings and resulting judgment were not clearly erroneous.[6] On the contrary, the findings of the Bankruptcy Judge are supported by the record.

The other alleged error raised by the Appellant concerning the admission of certain testimony during trial is unnecessary to decide because there is nothing in the record to suggest that the Bankruptcy Court relied upon that testimony in deciding the case.

---

[6]In fact, the conclusion of the Bankruptcy Court that Deluca had actual knowledge of the fraud, and intended to deceive Capital Source Finance, was probably more than required by the law to a finding of non dischargeability of the debt. The Eleventh Circuit has squarely held that "reckless disregard for the truth or falsity of a statement constitutes a 'false representation' under § 523(a)(2)(A) of the Bankruptcy Code." Birmingham Trust National Bank v. Case, 755 F.2d 1474, 1476 (11th Cir. 1985), superseded on other grounds by Pub. L. No. 98-353, 98 Stat. 333 (1984)..

The judgment of the Bankruptcy Court is AFFIRMED in all respects. The Clerk is directed to enter judgment accordingly, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida, this 4th day of September, 2012.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy, Courtroom Deputy